**Gary Allen PLYBON, Respondent,**

v.

**Duane BENTON, Director of Revenue, State of Missouri, Appellant.**

**No. WD 43765.**

Missouri Court of Appeals, Western District.

April 9, 1991.

William L. Webster, Atty. Gen., Jatha B. Sadowski, Special Asst. Atty. Gen., Jefferson City, for appellant.

Norman W. Lampton, Columbia, for respondent.

Before BERREY, P.J., and GAITAN and ULRICH, JJ.

ULRICH, Judge.

Duane Benton, Director of Revenue, appeals from default judgment entered on Gary Allen Plybon's petition seeking review of the Director's decision denying Mr. Plybon a driver's license. The default judgment entered by the trial court ordered the Director to issue a driver's license to Mr. Plybon. The trial court subsequently denied the Director's motion to set aside the default judgment. The issue presented is whether the trial court abused its discretion in refusing to sustain the Director's motion to set aside the default judgment. Mr. Plybon also seeks damages for frivolous appeal. The judgment is reversed, the cause is remanded for further proceedings, and the request for damages for frivolous appeal is denied.

Pursuant to 12 CSR 10–24.130(5), a driver's license applicant's peripheral vision must be at least seventy degrees in each eye before the Director of Revenue is authorized to issue the applicant a driver's license. Gary Allen Plybon's ophthalmologist, in a letter received by the Director of Revenue, stated that Mr. Plybon's peripheral vision was approximately twenty degrees in each eye. The Director notified Mr. Plybon by letter dated January 29, 1990, of his decision declining to issue Mr. Plybon a Missouri operator's license "because of [Mr. Plybon's] unacceptable peripheral vision reading" test administered by Mr. Plybon's ophthalmologist. Mr. Plybon filed a petition for review in the circuit court on February 27, 1990, challenging the Director's denial of his application for a driver's license. The Director was served with Mr. Plybon's petition for review on March 8, 1990.

In accordance with § 302.311, RSMo 1986, the Director of Revenue requested by

letter that the Prosecuting Attorney of Boone County represent him in the hearing on Mr. Plybon's petition for review. On June 1, 1990, Mr. Plybon filed a motion for default judgment and the motion was heard on June 11, 1990. The Prosecuting Attorney of Boone County did not appear in behalf of the Director, and the Director was not represented at the hearing. During the very brief hearing, the letter from Mr. Plybon's ophthalmologist was introduced. The letter stated:

Re: PLYBON, Gary A. No. 90295

TO WHOM IT MAY CONCERN:

Mr. Plybon was examined in my office on January 11, 1990. He has retinitis, pigmentosa and is forty years old. He has apparently been safely driving an automobile for the last twenty-four years. His visual acuity was 20/40-1 in the right eye and 20/40-2 in the left eye with his present glasses. Attached are copies of his Goldmann visual fields, which show approximately twenty degrees of field in each eye. It has been my experience that persons who have had sharply limited peripheral visual fields for many years adjust to the absence of side vision very well and are generally capable of being safe drivers if their central acuity is good enough. I would recommend that this person be allowed to drive an automobile under limited daytime conditions.

The trial court entered default judgment against the Director of Revenue requiring the Director to issue Mr. Plybon an operator's license. On June 15, 1990, the Director received notice of the default judgment. The Director immediately notified the Boone County Prosecuting Attorney, and the prosecutor advised the Director that he had not received either a file pertaining to Mr. Plybon or any request for representation from the Director.

On June 29, 1990, the Director filed a motion to set aside default judgment, and on July 10, 1990, the prosecutor entered his appearance for the Director. The motion was called for hearing on August 13, 1990. An Assistant Boone County Prosecuting Attorney appeared in behalf of the Director, and the sole witness at the hearing, another Assistant Boone County Prosecuting Attorney, testified as follows:

Q. (By Robert Sterner, assistant prosecuting attorney): Have you handled the case of Gary Plybon vs. Duane Benton, the Director of Revenue, in the prosecutor's office?

A. (By Mike Fusselman, assistant prosecutor with Boone County Prosecutor's Office): I have.

Q. When were you first—do you recall when you were first aware of this case?

A. I received a letter from the Department of Revenue, I think it was in July, sometime.

Q. And that was asking to have this default judgment set aside; is that correct?

A. That's correct.

Q. Let me show you what's been marked as State's Exhibit 1. You've seen that exhibit in the file, haven't you?

A. Yes. I reviewed it this morning again.

Q. Okay. The second page of that document, did you see that on or about March of this year?

A. No, I did not.

Q. So you weren't aware that this case was even set until July, long after the default judgment had been entered; is that right?

A. That's correct.

Q. So you had not communicated with the Director of Revenue regarding this case until you received notice that they were asking for default judgment to be set aside, is that correct?

A. That's correct. I'm also looking at this, and it says the 21st day of June on this certification, so it could have been in June sometime that I received my letter from them, somewhere in there, mid-June.

Q. Had you been aware of the fact that the motion was pending, would you have been prepared to come and represent the State and put on a defense of the Director of Revenue's action?

A. I have not done this type of action before. I probably would have referred this case to John Patton, who I think regularly handles these for the prosecutor's office.

Q. At any rate, the prosecutor's office would have presented a defense for the Director of Revenue's actions?

A. Yes. That's my understanding.

Q. Have you seen this Motion to Set Aside Default Judgment which bears your signature and Waylene Wilhoit Hiles' signature?

A. Yes, I have.

Q. Do you believe the information in that to be true and correct?

A. I do.

The trial court further questioned the assistant prosecutor as revealed by the following portion of the record:

By the Court:

Q. Mr. Fusselman, you being the attorney for the Department of Revenue, do you know any reason why your client didn't get in touch with you? Because apparently your client was served in March.

A. I have no idea, Your Honor. I see that they did mail a letter to us. I don't know what happened after that. I don't know why we didn't receive anything from them.

MR. STERNER: I'd like to offer State's Exhibit 1, which I think speaks to the Court's question.

THE COURT: State's Exhibit 1 will be admitted. [State's Exhibit 1 is a certified copy of a letter from the General Counsel's office, Director of Revenue, sent to the Boone County prosecutor's office, dated March 19, 1990, requesting representation.]

-----

(State's Exhibit 1 was admitted into evidence.)

-----

Q. So you were sent a letter in March?

A. According to their file, we were sent a letter in March. We didn't receive

anything, at least to my knowledge, in our office. And as I said earlier, routinely I believe that John Patton's office handles these matters, but it's my belief that we didn't receive anything on this particular case.

THE COURT: Okay. Anything else?

MR. STERNER: Nothing else, Your Honor.

THE COURT: You may step down.

The trial court subsequently overruled the Director's motion to set aside the default judgment, and the Director appeals.

Rule 74.05(c), prescribes the circumstances which permit the setting aside of a default judgment. Rule 74.05(c) states in pertinent part:

**When Set Aside.** Upon motion stating facts constituting a meritorious defense and for good cause shown, ... a default judgment may be set aside. The motion shall be made within a reasonable time not to exceed one year after the entry of the default judgment. Good cause includes a mistake or conduct that is not intentionally or recklessly designed to impede the judicial process. An order setting aside ... a default judgment may be conditioned on such terms as are just, including a requirement that the party in default pay reasonable attorney's fees and expenses incurred as a result of the default by the party who requested the default.

On appeal, the Director contends that the trial court abused its discretion in overruling his motion to set aside the default judgment.

Pursuant to Rule 74.05(c), a motion to set aside a default judgment must state facts constituting a meritorious defense and the movant must show good cause. The Director, as provided in 12 CSR 10–24.130(5), is prohibited from issuing an operator's license if an applicant's peripheral vision does not meet minimum standards. The Director's motion to set aside the default judgment alleges that Mr. Plybon's peripheral vision fails to meet the standard required by law and, as a result of Mr. Plybon's malady, the Director is precluded by law from issuing Mr. Plybon a license to

operate a motor vehicle. The letter from Mr. Plybon's ophthalmologist, introduced during the default hearing, supports the Director's claim and appears to establish a meritorious defense to Mr. Plybon's petition.

Rule 74.05(c) further requires that a movant show good cause for failing to properly respond to petitioner's petition before the default judgment can be set aside. According to Rule 74.05(c), good cause includes a mistake or conduct that is not intentionally or recklessly designed to impede the judicial process. The question is whether the entire record demonstrates that the Director made a showing of good cause for his failure to answer Mr. Plybon's petition.

■ The Director failed to file an answer to Mr. Plybon's petition within the required time. However, evidence adduced during the hearing on the motion to set aside the default judgment demonstrates that, although the Boone County Prosecutor's office did not receive a request to represent the Director, such request was mailed to the Prosecutor. Additionally, the evidence at the hearing supports the conclusion that the Director was unaware that a motion for default judgment had been filed and that a hearing on the motion would be held on June 11, 1990. When the Director learned that the trial court had entered default judgment, the Prosecuting Attorney filed a motion to set aside the default judgment in behalf of the Director. The record discloses that the failure to file an answer to Mr. Plybon's petition or to appear by counsel at the default judgment hearing was not intentionally or recklessly designed to impede the judicial process. *See Gibson v. Elley,* 778 S.W.2d 851, 854 (Mo.App.1989) (discussing the meaning of "recklessness" within the context of Rule 74.05). Good cause was shown for the Director's failure to file a timely answer to Mr. Plybon's petition.

■ Trial courts have broad discretion to grant or deny motions to set aside default judgment, even though appellate courts favor a trial on the merits rather than default, particularly when a substantial defense exists. *Courtin v. McGraw Constr. Co.,* 639 S.W.2d 286, 288 (Mo.App. 1982). Normally, the setting aside of a default judgment by a trial court will not be interfered with unless an abuse of that discretion is found. *Elley,* 778 S.W.2d at 853. However, the trial court's discretion not to set aside a default judgment is narrower than the discretion to set a default judgment aside. *Id.* at 853–54. (citing *First Missouri Bank v. Patterson,* 696 S.W.2d 800, 801 (Mo.App.1985)). Thus, appellate courts are much more inclined to interfere with the trial court's decision when the motion to set aside the judgment has been denied. *Elley,* 778 S.W.2d at 854. The court in *Elley* further notes that historically, "[t]he general rule is that, where the application or motion to set aside discloses a meritorious defense, and reasonable diligence or excuse for default is shown, and no substantial injury to plaintiff will result from the delay, a trial court *should* exercise its discretion in favor of a trial on the merits." *Id.* (quoting *Whitledge v. Anderson Air Activities, Inc.,* 276 S.W.2d 114, 116 (Mo.1955)).

■ The record discloses that the trial court abused its discretion by refusing to sustain the Director's motion to set aside default judgment. Therefore, the trial court's judgment is reversed, and the cause is remanded with instructions to set aside the default judgment and to permit the Director to enter an appearance and file applicable pleadings. Mr. Plybon's motion for sanctions, alleging a frivolous appeal, is denied.

All concur.